UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No. 1:21-cr-000162-1(BAH) |
| GLEN WES LEE CROY, | : | |
| | : | |
| Defendant. | : | |

# DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

To compare Mr. Croy to Mr. Reeder-a defendant who had a physical confrontation with a police officer and is at the leading edge of the procession to breach the Capitol, is absolutely ludicrous. Creating a penumbra of evidence when there is none should not be tolerated by this Court. After an exhaustive, fruitless search for more ways to impugn Mr. Croy in order to give this Court a reason to incarcerate him rather than order a sentence of probation, the government now engages in creating "maybe so's" and "could be's" when there is no evidence supporting what the government argues. These conjectural statements by the government grow by leaps and bounds.

At this juncture, the government has committed two logical fallacies of note that hinder their "argument." The first fallacy being a *fallacy of composition*: assuming that a part (Mr. Croy) of the whole (the protesters) has all the properties of the whole itself. That is, the government's mistake is thinking that, because Mr. Croy is a part of a larger crowd (in which other members of the crowd were indeed

1

violent) he also shares in the same properties as everyone else in the crowd (being violent), but he does not. The first fallacy leads nicely to the government's second fallacy of reason: *petitio principii* or begging the question. This second fallacy is a fault in reasoning where one assumes the conclusion he is trying to prove. In this case, the government is assuming their conclusion without producing a valid argument with true premises that leads to that conclusion.  Rather, the government is associating Mr. Croy with other members of a larger whole and thus foregoing any kind of argument that is specific to Mr. Croy. The discussion *infra* explores in more detail these two fallacies.

      The government argues that Mr. Croy deserves a custodial sentence for several reasons summarized in the introduction to its sentencing memo.  First they argue that Mr. Croy  "(1) entered the Capitol after witnessing law enforcement attempt to keep rioters at bay for over an hour." *See* Gov't Sent. Memo at p. 1. However, the evidence both from Mr. Croy's own words and in the form of video evidence shows that what he saw that day contradicts the government's point. What Mr. Croy initially saw were peaceful protestors exercising their constitutional right to assemble and protest peacefully outside the Capitol. In fact, the government knows this to be true as video evidence of Mr. Croy in the crowd outside the Capitol that day shows Metropolitan Police Department, (hereinafter "MPD") officers walk through a crowd of people standing around peacefully that

day. No restricted access signs or barricades are present in the area where Mr. Croy stood as he described to this Court during his plea hearing. No officers are asking people to move away or leave the areas. The MPD officers walk through a line of these peaceful protestors as they march towards the Capitol area to precisely where Mr. Croy was standing. The video shows people assembled with flags, but no one fighting or confronting police. In fact, there are no police visible until the MPD officers arrive and begin an altercation with another bystander. *See* Defendant's reply Ex. 1, VLC-record -2021-10-14-13h4332s-20210106-Rioting-United_States_Capitol_Building-MP4. Only later does Mr. Croy witness police shooting smoke bombs as he described at his plea hearing. *See* Plea Trans. at p. 20. Although he later also joined in chanting with others saying "whose house, our house," he did not say "where's Nancy" or any other vituperative statement.

MPD officer body worn camera shows the officers approach to the Capitol that day. *See* Defendant's reply exhibit 1. The beginning of this video shows the officers walking past peaceful protestors. The path is unrestricted as they make their way into the crowd. There are no overturned barricades or "no entry" signs in the pathway. Some of the people are singing while they are standing around. One even tells the officers to "go get em" as they march past. Many in the crowd are saying things to the officers that are not supportive. One woman calls them "Stormtroopers" and another man says they are "oath breakers" and several call

them "traitors." (This is not unlike what BLM protestors had been calling police officers all summer long at the peaceful protests covered on national media). On the video, the MPD officers ignore the comments and continue on towards a slightly more densely packed area of the crowd. This is where Mr. Croy was standing that day on the Capitol grounds. You can see he is on the walkway outside the capitol- not on the scaffolding or up on the stairs like hundreds of others. At approximately 2:08 in the video, a scuffle begins to take place between MPD officers and a unknown protestor. The body camera does not show the beginning of the incident or what or who started it. According to Mr. Croy, who can be seen among the bystanders to this event beginning at 2:25 in the video, he watched in amazement as the police attacked a protestor for what seemed to be no apparent reason. He found it shocking how hard they beat down this person as everyone watched. He grabbed his cell phone to capture the incident but only managed to get the aftermath. Mr. Croy believed he was bearing witness to an unprovoked attack by law enforcement on a citizen for no reason and that the use of force was excessive given the situation. (This is not unlike how many BLM protestors have felt with regard to police action against communities of color). His first reaction was to grab his cell phone and try to document this excessive use of force by the police. This cell phone footage is now what the government seeks to introduce as proof of Mr. Croy's support for the violence of that day. That is a

complete fantasy on the part of the government and an attempt now to paint Mr. Croy as a violent supporter of some conspiracy to overturn the government.  This narrative fits what the government wants people to think of everyone who was present at the Capitol and on the grounds on January 6th, but it is far from true.  In fact, as Mr. Croy told the FBI in his post plea interview, the only violence Mr. Croy witnessed first-hand that day was that of these MPD officers attacking this protestor. This is NOT to say there was no violence, only that Mr. Croy did not witness it. As previously stated, every other time he encountered law enforcement they were doing their jobs in a professional, helpful manner.

The Government next argues exactly the point discussed above: that Mr. Croy "(2) supported violent, aggressive, and antagonistic actions against law enforcement through his presence in a mob overwhelming law enforcement officers and forcing them to retreat further into the Capitol." *See* Gov't Sent. Memo at p.1.  How can Mr. Croy's mere presence be equated to be "support" for violence and aggression against police?  For example, is it a violation of law to support BLM, even if their mission supports "violent" and "aggressive" actions against law enforcement as a core underlying objective?  Would being a peaceful attendee at a BLM protest lead to culpability for violent acts committed at those protests by Antifa?  Mr. Croy was not violent, aggressive, or antagonistic towards law enforcement nor did he have any intent to support people who behaved that

5

way. The government has conceded that there is no evidence of Mr. Croy engaging with law enforcement personally in a violent or aggressive manner. In fact, all evidence shows that when asked to comply with law enforcement directives that day he willingly did so and with a peaceful and respectful demeanor. *See* Ex. 4. Joint filing. In this clip from the House Wing Door, Mr. Croy is following police down a hall as if being led in that direction only to be turned around with others who peacefully leave. At the end of that video at approximately 2:50 into the clip, Mr. Croy passes two police officers. The female nods at him. He acknowledges her. This perfectly describes Mr. Croy's demeanor that day-respectful and friendly to the police with the exception of him reacting to the police brutality he witnessed outside the Capitol.

Here, the government is arguing that Mr. Croy supported violence against law enforcement merely through his presence in a larger group people that day whom Mr. Croy neither knew or supported. *See* fallacy, *supra*. Despite the government claims of one cohesive collection of Trump supporters on some collaborative mission to overrun officers in the Capitol, the group was in fact as diverse as the people in this nation with many different reasons for being there that day. It was a collection of people with diversity in purpose, message and intent. Mr. Croy had no intention of behaving violently that day or disrespecting law

enforcement and that fact, supported by the evidence of his non-violent and non-aggressive behavior that day, should mitigate against custodial time in this case.

The government also argues that Mr. Croy "(3) disregarded the severity of his actions while he trapsed through the Capitol as if it was an amusement park." (sic) Gov't Sent. Memo at p. 1. First of all, Mr. Croy did not traipse. He acted with civility when he walked through the Capitol. Second, he walked in a large crowd. Third, he was a follower, not a leader. He didn't destroy anything, disrespect anything or anyone, with the exception of taking pictures of someone putting a Trump hat on a bust of Winston Churchill. That's disrespectful. However, this is not unlike BLM protesters taking their photos atop of bronze statues of heroes throughout this city. Notably, he didn't set him on fire, urinate on him, or spray paint Prime Minister Churchill.

The government further argues that he (4) wrongfully entered the U.S. Capitol a *second* time. *Id.* The video evidence speaks for itself on this point. Mr. Croy was pushed in by the crowd. *See* joint video exhibit 8, CCV Rotunda Door Interior at 22 seconds. The video must be viewed carefully. One can see that the man next to Croy is so smashed by the crowd, that he has his hands up above his head. Mr. Croy is holding his cell phone in one hand and flag in the other close to his body and is not able to videotape anything because he is so crushed by the crowd. There is a surge that carries that entire group of people in the door, not just

Mr. Croy. The crush doesn't start with Mr. Croy, but is started by the group of people behind Mr. Croy. The voices you can hear behind Mr. Croy on his cell phone video are people saying "Push through." *See* Joint Ex. 7, outside Rotunda door.MP4. The cell phone video captures someone in the crowd at 37 seconds yelling "get back in there." This is not Mr. Croy but voices behind him. This same person repeats the same thing at 43 seconds. At 1:16, another person yells "in" and at 1:24 that same person says "push forward" and Mr. Croy is pushed forward and stops video-taping as he is pushed forward.

The Government also argues "(5) [he] later bragged about and defended his actions to his friend." *See* Gov't Sent. Memo at p.2. Actually, the substance of the statements by Mr. Croy also affirm that he was non-violent and was not bragging. The government cites certain Facebook posts and texts yet does not give pinpoint cites. There are more than 12,000 pages of phone and Facebook records in discovery. Not surprisingly, undersigned counsel has not sifted through those thousands of pages but will endeavor to find these specific cites and give the Court context in a supplemental filing, if appropriate and relevant.[1] But you can see that what the Government argues Mr. Croy did happened on January 7 and 8, many days and months before anyone even knew the level of violence and destruction.

---

[1] The prosecutor, Mr. O'Connor, has been extremely helpful and cooperative when answering undersigned counsel's many questions about discovery in this case.

*See* Gov't Sent. Memo at p. 12.  Mr. Croy was reporting simply what he himself had seen. And the Government misleads the Court by saying a witness told the government that Mr. Croy deleted his Facebook account. He did not. He was banned by Facebook on January 22, 2021. *See* Defendant's reply ex. 2, defendant's phone message screenshot. It took Facebook 15 days to assess the violence and start banning people. *See* [Facebook policy on deleting accounts](). This proves the point that Mr. Croy didn't know how bad it was, even if you had been there. Undersigned counsel requested information on this secret witness and exactly what videos they think Mr. Croy deleted but the government has not yet responded to this request.

    The government also argues that but for his actions alongside so many others, the riot likely would have failed. *See* Gov't Sent. Memo at p. 2.  Mr. Croy wasn't there to riot. There was no intention on Mr. Croy's part for the riot to succeed or fail. Characterizing his behavior as "rioting" is improper. He is not charged rioting. He pled guilty to parading, picketing and demonstrating in a Capitol building. The government at the plea hearing told this Court that they could not prove his intent beyond a reasonable doubt as a rioter and that's why he was not charged with this. *See* plea hearing transcript, p. 25.  There were thousands of people at this time actually peacefully protesting. As previously mentioned, at this point, Mr. Croy was outraged by the actions of the police in beating a

seemingly peaceful protester in the crowd where he was standing. This video, from MPD BWC, clearly shows this. *See* Defendant's reply Ex. 1, VLC-record -2-21-10-14-13h4332s-20210106-Rioting-United_States_Capitol_Building-MP4. If there had not been bystanders videotaping the horrible death of George Floyd, we would never have known the severity of it. So Mr. Croy was trying to videotape what we want all citizens in America to do-- to hold law enforcement accountable and if that means videotaping something incongruent with the law enforcement mission to protect the public, so be it.   All summer long BLM protesters of 2020 confronted, harassed, taunted and jeered law enforcement officers.

    The government continues to make up their own facts out of whole cloth by stating  "[in] heading that direction, the defendant would have walked over the shattered glass from the window broken for the rioters to gain entry into the Capitol." *See* Gov't brief  at p. 4.  "Would have" is the government imagining evidence instead of sticking to the facts before them. The fact is that Mr. Croy was approximately the 700th person through this door that day, although he knew he should not enter at all.   He entered through it unhindered by law enforcement or signage that suggested the entry was forbidden at that point.  He followed hundreds before him. He spent only a few seconds in the lobby and was not near the broken windows at all, which were several feet away from where Mr. Croy entered. The unfounded speculation that he would have noticed the broken glass as he walked

10

along the corridor is again wishful thinking on the part of the government.

The government also suggests that "At about 2:25pm, roughly five minutes after the defendant entered the Crypt, the presence of such a large number of rioters eventually overwhelmed law enforcement, pushing the officers back as rioters walked through the Crypt and throughout the rest of the Capitol. *See* Gov't Sent Memo at p. 6, referencing Joint Ex. 3, known as the "fish eye" video. Here, Mr. Croy is not amongst the first people in the crypt and he stays a good distance from the police.  He isn't the front line of people that overwhelmed law enforcement. Like all of his actions that day, he was a follower, not a leader. There were people in that crowd that day whose whole purpose was to incite and corral the followers.   In one instance people are pushing their way through the memorial door area and are retreating due to police pushing back, however two women enter the lobby on the footage and urge, organize and push the crowd to move forward. This occurs approximately at second 47 in the video. *See* Joint filing exhibit 5, CCV Memorial Door. MP4.  As these people demonstrate, there were people present that day with an agenda to overcome the law enforcement and they took active steps to incite, motivate and organize others to participate as a mob.  Mr. Croy was not one of them.   Mr. Croy enters that same lobby several minutes later captured in Joint filing Exhibit 6 at 3:52 only after hundreds of others have passed through the same lobby. The inciters are long gone.   When he enters, he does so

11

with no sense of urgency or aggression towards law enforcement. In reality, he is following the pathway others are following with no idea who is in charge and is soaking up the moment. *See* Joint filing exhibit 6 – CCV Memorial Door. MP4.

The government goes on to invent another theory about Mr. Croy's intent by stating that "[r]ather than leaving the Capitol grounds at that time, the defendant apparently decided that he had not yet had enough; and he entered the building a second time through the Rotunda" *See* P. 9 of gov't sent memo. Not so. Mr. Croy stated in his post plea interview with the FBI that he saw a man with a bloody t-shirt run out of the Capitol shouting someone had been shot. Mr. Croy was curious and thinking he could help someone. He had no intention of going in until the crowd pushed him through. And, the evidence shows, he was then sprayed by the police, helped by the police, and exited the building peacefully. Many rioters in the Crypt were yelling obscenities at police officers and being belligerent and Mr. Croy did not engage or get caught up in that behavior.

The government argues that Mr. Croy's messaging on social media makes him look like all other January 6 defendants, but this is not so. The government is painting Mr. Croy like all other January 6 defendants. However, he is not like all the other January 6 defendants for these reasons: he didn't brag publicly on social media platforms about what he did; he did not brag about the violence that day;

he did not post about the violence at the Capitol at all. Rather, he sent factual statements about where he was. Additionally, the messages he sent were *private messages*. (emphasis added).  Most of the other January 6 defendants used social media to brag and boast about what they did at the Capitol that day.   It doesn't make sense to have the same form of punishment for Mr. Croy given these differences. The government also argues that Mr. Croy's statements to others after January 6th, such as "we stormed the Capitol," "I got videos…" and "that was a legit mostly peaceful protest unlike the burning buildings we see during the summer and told is mostly peaceful," is his attempt to brag about his participation in the riots that day. *See* Gov't Sent Memo at p. 12. This is yet another attempt by the government to argue that Mr. Croy's private messages were somehow indicative of his intent to stop the vote. Yet, nowhere in Mr. Croy's messages did he talk about the vote or any attempt to stop it.  The government is again is assuming the conclusion they are trying to prove.

    All these facts support Mr. Croy's claim that what he witnessed that day was mostly a peaceful protest in his eyes. Only later did the reports of rampant violence at some areas around the capitol begin to surface and he was shocked. Mr. Croy wanted to let his friends know that he was not part of that violence and did not support those people in what they did.

13

The Government claims that "…one witness advised within a week from January 6, that the defendant had deleted photos and videos from his Facebook account as well as the account itself." *See* P. 12, Gov't Sent Memo. Mr. Croy has no idea what this references, and his Facebook account was taken down by Facebook. *See* Defendant's Reply Ex. 2. He did not delete anything. Mr. Croy is simply trying to understand the entire events of the day in the context of how the media portrayed BLM protests for the previous 6 months, and stating what went on that day.

The government further states that in determining a fair and just sentence on this spectrum, this Court should look to a number of critical factors. The defense agrees, and responds as follows: (1) whether, when, and how the defendant entered the Capitol Building. *Through a door*. (2) whether the defendant engaged in any violence or incited violence; *none.* (3) whether the defendant engaged in any acts of destruction; *none;* (4) the defendant's reaction to acts of violence or destruction; *made him sick to his stomach when he later saw what others did to police officers and the Capitol*; (5) whether during or after the riot, the defendant destroyed evidence; *None;* (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; *less than an hour; he was a follower in a sea of hundreds if not thousands of other followers and he never went into any private office, the senate or the house chambers* (7) the defendant's

14

statements in person or on social media; *Mr. Croy notably did not make any statements after he saw the destruction and violence caused by others and the majority of communications were private messaging on January 7 and 8;* (8) whether the defendant cooperated with, or ignored, law enforcement; *Mr. Croy has cooperated to an extent that exceeds the government's request;* (9) whether the defendant otherwise exhibited evidence of remorse or contrition.  *Mr. Croy has stated repeatedly that he wished he'd never come to D.C. and that he wants all this to be behind him. He has apologized to the Court, his family, and to the Country.* *See* P. 15 Gov't Sent. Memo.

    The government next argues that Mr. Croy "even practically brushed against a group of officers as his fellow rioters confronted and harassed them." *See* Gov't. Sent Memo at p. 15. Mr. Croy did not know any of those rioters.  It doesn't follow that the people around Mr. Croy were his "fellow rioters." What is "practically brushed?" Is it like practically pregnant? Here, the government engages in a stretch of the facts because they cannot come up with anything egregious about Mr. Croy's conduct like they have other defendants where they asked for a jail sentence.  The crux of the Government's argument is that Mr. Croy should be held accountable for the actions of violent rioters because of his mere presence in the Capitol that day. To say that Mr. Croy's presence was the reason why law enforcement was unable to protect the Capitol is unsound.  If we allow

15

the government the account that Mr. Croy "practically brushed" against a group of officers, that still does not show 1) he did so out of his own volition and 2) that it was ill intended in any way.

Each and every day the defense lawyers in these cases are learning more about what happened that day. Undersigned counsel has received *Brady* evidence in this case and others that suggests police officers let hundreds of people beyond the barricades and welcomed them onto the capitol grounds. *See* Defendant's reply Ex. 3 (CAPD_000001588.MOV)( video of guard moving barricades, as one example). Additionally, defense lawyers have received information that there were FBI agents in the crowd. Also, HBO aired a special January 6th program on Friday, October 22nd, 2021, that featured video footage that reportedly has not been previously revealed to the defense lawyers in these cases. Additionally, The Senate Report entitled "Examining the U.S. Capitol Attack: A Review of the Security, Planning, and Response Failure on January 6" issued in June 8, 2021 found that federal Intelligence failed to issue a threat assessment warning of potential violence targeting the Capitol on January 6. That failure contributed to the United Stated Capitol Police (hereinafter "USCP") being inadequately prepared to prevent or respond to the January 6 security threats. The failures in both intelligence and planning were found to have contributed to the breach of the Capitol. *See* Defendant's reply Ex. 4, Report at p. 2. According to the report, the

USCP did not have proper plans in place to address the situation from a staffing perspective nor were USCP Officers trained or equipped to defend against the January 6 attack. *Id*. at p. 58.   To say that Mr. Croy's mere presence in the Capitol was even a significant contributing factor to the law enforcement's failed efforts to keep the Capitol safe is just not true. There were a myriad of factors that day that contributed to how the day played out, and we are still finding out more as the days go on. The Senate report noted that:

> USCP leadership also failed to provide front-line officers with effective protective equipment or training. Although USCP activated seven specialty Civil Disturbance Unit ("CDU") platoons in advance of the Joint Session, only four of those platoons were outfitted with special protective equipment, including helmets, hardened plastic armor, and shields. The many other USCP officers who fought to defend the Capitol were left to do so in their daily uniforms. Many of those front-line officers had not received training in basic civil disturbance tactics since their initial Recruit Officer Class training. While some CDU officers were issued special protective equipment, the platoons were not authorized to wear the equipment at the beginning of their shifts. Instead, USCP staged equipment on buses near the Capitol. In at least one instance, when the platoon attempted to retrieve the equipment, the bus was locked, leaving the platoon without access to this critical equipment. *See* Defendant's Reply Ex. 4 at p. 2.

In this case, the government has argued that Mr. Croy deserves a prison sentence because  he  (1) entered the Capitol after witnessing law enforcement attempt to keep rioters at bay for over an hour, (2) supported violent, aggressive, and antagonistic actions against law enforcement through his presence in a mob overwhelming law enforcement officers and forcing them to retreat further into the

Capitol, (3) disregarded the severity of his actions while he trapsed through the Capitol as if it was an amusement park, (4) wrongfully entered the U.S. Capitol a *second* time, and (5) later bragged about and defended his actions to friends. *See* Gov't Sent Memo at p. 1. He entered the Capitol because he was exercising his constitutional right to have his voice heard and he thought that was his right. Mr. Croy didn't support any violent or aggressive actions against law enforcement. As previously noted, Mr. Croy went into the Capitol twice because he saw a man in a bloody t-shirt come down the Capitol steps and heard him say that someone had been shot. Though he did wrongfully go into the Capitol a second time, he did so to help others and he was actually pushed in by the mob. Mr. Croy was curious and wanted to help. Unlike others, he did not engage in any violence, take anything, destroy anything, hurt anyone, or assist those who did. He regrets his actions. He has apologized and paid for his misbehavior in many ways, such as the shame he's faced with his family, co-workers, and the effects on his two teenage sons. A prison sentence in a case where someone was disrespectful not of others, but of a piece of bronze in a building, and even the building itself, would be a grave injustice. Mr. Croy implores the Court to give him a sentence that is commensurate with his individual behavior and only his behavior. That is to say, Mr. Croy's actions are importantly different than other defendants who have

received jail time. It is for this reason, that is makes no sense to prescribe the same punishment on Mr. Croy.

          Respectfully submitted,

By:   /s/
    KIRA ANNE WEST
    DC Bar No. 993523
    712 H. St NE, Unit #509
    Washington, D.C. 20002
    Phone: 202-236-2042
    kiraannewest@gmail.com

CERTIFICATE OF SERVICE

I hereby certify on the 27th day of October, 2021 a copy of same was delivered to the parties of record, by email pursuant to the Covid standing order and the rules of the Clerk of Court.

                                                      /S/
                                        Kira Anne West